2006 WY 125

**The STATE of Wyoming, Petitioner,**

v.

**Laura Jeanne NAPLE, Respondent.**

**No. 05–113.**

Supreme Court of Wyoming.

Sept. 29, 2006.

Representing Petitioner: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General. Argument by Mr. Pauling.

Representing Respondent: Kenneth M. Koski, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Senior Assistant Appellate Counsel. Argument by Ms. Domonkos.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] The district court dismissed with prejudice a controlled substances charge against Laura Jeanne Naple as a sanction for the State's failure to comply with its discovery obligations. We granted the State's petition for a writ of review and conclude the district court had the authority, under W.R.Cr.P. 16(d)(2), to dismiss the criminal charge with prejudice to sanction the State for violating a discovery obligation. That authority must, however, be used cautiously and only after consideration of the proper factors, including the reasons for the discovery violation, the prejudice to the defendant, and the possibility of imposing lesser sanctions such as a continuance. The district court abused its discretion in this case by failing to conduct the appropriate inquiry to determine whether the severe sanction of dismissal with prejudice was justified. Consequently, we reverse and remand.

* Chief Justice at time of oral argument.

## ISSUES

[¶ 2]   The State and Ms. Naple present the same issue for review:

> Did the district court abuse its discretion in dismissing with prejudice the charge against respondent?

## FACTS

[¶ 3]   Many of the underlying facts of this case are not particularly relevant to the question presented on appeal. Therefore, we will discuss only those facts which are pertinent to our decision. Ms. Naple was a passenger in a van stopped by Wyoming Highway Patrol Trooper Bisceglia. During the stop, one of the other passengers admitted to having a small amount of marijuana. Trooper Green was summoned to the scene with his drug detection dog, and the officers performed a search of the vehicle, recovering several small containers and a one pound container of marijuana. All of the occupants of the vehicle were arrested. While Trooper Green was arresting Ms. Naple, she apparently stated the marijuana was her medicine and she had a prescription for it.

[¶ 4]   The State charged Ms. Naple with one count of possession of a controlled substance with intent to deliver, in violation of Wyo. Stat. Ann. § 35-7-1031(a)(ii) (Lexis-Nexis 2003).[1] The affidavit accompanying the criminal information referred to Ms. Naple's statement to Trooper Green about the marijuana being her medicine. She pleaded not guilty to the charge, and her attorney demanded discovery from the State. The State filed a notice with the district court representing it had complied with its discovery obligations. None of the police reports provided to the defense by the State referenced Ms. Naple's statement to Trooper Green. Relying on the lack of written documentation of her inculpatory statement, the

defense attorney told the jury, in his opening statement at trial, that her statement was not referenced in any police report.

[¶ 5]   Trooper Bisceglia was the first witness to testify at trial. During his cross-examination, he referred to a report written by Trooper Green which included Ms. Naple's inculpatory statement. Ms. Naple moved for a mistrial, claiming she was prejudiced by the State's failure to produce Trooper Green's report, especially in light of defense counsel's opening statement. The district court granted her request for a mistrial and dismissed the case. In its oral ruling dismissing the case, the district court stated that the State had the option of re-filing the charges against Ms. Naple.

[¶ 6]   The State filed a motion for reconsideration of the dismissal, requesting the district court to simply set a new trial date rather than require the State to initiate a new prosecution. Ms. Naple filed a response to the State's motion and specifically requested the charge be dismissed with prejudice. In support of her motion, Ms. Naple referred to several other cases in the local district and circuit courts where the State had failed to comply with its discovery obligations and had been warned that future violations would be punished by dismissal with prejudice.

[¶ 7]   The district court apparently did not hold a hearing on the pending motions, but it took the parties' motions under advisement and entered an order dismissing the charge against Ms. Naple with prejudice. The State filed a Petition for Writ of Review in the Nature of Certiorari in this Court. After careful review of the petition and related materials, we granted the State's petition.

## STANDARD OF REVIEW

[¶ 8]   A trial court has discretion in determining the proper sanction for a

---

1.   Section 35-7-1031 provided, in pertinent part:
   (a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:

   * * *

   (ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and

upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both[.]

party's violation of its discovery responsibilities. *Lawson v. State*, 994 P.2d 943, 946 (Wyo.2000); *Lindsey v. State*, 725 P.2d 649, 655 (Wyo.1986). "The decision of the court in addressing the breach of a discovery order will be set aside only for an abuse of discretion." *Lindsey*, 725 P.2d at 655. In determining whether the trial court abused its discretion, "the ultimate issue is whether or not the court could reasonably conclude as it did." *Lawson*, 994 P.2d at 947.

■ [¶ 9] Although the State articulates its issue as one of discretion, it also argues the trial court did not have the legal authority to dismiss the charge against Ms. Naple with prejudice and the court's ruling violated the separation of powers doctrine. Because this argument involves questions of law and implicates constitutional issues, we review it *de novo*. *Messer v. State*, 2004 WY 98, ¶ 8, 96 P.3d 12, 15 (Wyo.2004).

## DISCUSSION

### A. Court's Authority to Dismiss Criminal Charges With Prejudice

[¶ 10] The trial court granted a mistrial and dismissed the charge against Ms. Naple with prejudice because the State had violated its discovery obligation by failing to produce Trooper Green's report. At this juncture, the State agrees the mistrial was warranted, and, in any event, the correctness of the district court's decision to grant a mistrial is moot because the jury has been discharged. *State v. Newman*, 2004 WY 41, ¶ 24, 88 P.3d 445, 453–54 (Wyo.2004). The State claims, however, the district court exceeded its authority when it granted a dismissal with prejudice.[2]

[¶ 11] The State failed to comply with its discovery obligations under W.R.Cr.P. 16 which requires the State to provide discovery to the defense and specifically addresses sanctions for violations of discovery requirements:

(a) *Disclosure of Evidence State.*

(1) Information Subject to Disclosure.

(A) Statement of Defendant.

(i) Upon written demand of a defendant the state shall permit the defendant to inspect and copy or photograph:

1. Any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the state;

2. The substance of any oral statement which the state intends to offer in evidence at the trial made by the defendant whether before or after arrest[.]

\* \* \*

(d) *Regulation by Court.*

\* \* \*

(2) Failure to Comply.—If at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

W.R.Cr.P. 16. Of particular importance to our discussion is the language which allows the court to "enter such other order as it deems just under the circumstances." W.R.Cr.P. 16(d)(2). The question presented here is whether that language permits a district court to dismiss a prosecution with prejudice because of the State's violation of its discovery obligations.

■ [¶ 12] Wyoming's Rule 16 is modeled after the comparable federal rule. When a federal rule is similar to a Wyoming rule, "we give great weight to federal precedent" pertaining to that rule. *Billis v. State*, 800 P.2d 401, 421 (Wyo.1990). Federal courts have considered whether Rule 16(d)(2)

---

**2.** At this stage of the case, there is no claim a second trial would implicate double jeopardy concerns. Our decision here offers no opinion or ruling as to any future double jeopardy argument.

allows a trial court to dismiss charges against a defendant as a sanction for the government's failure to comply with its discovery violations. *See, e.g., United States v. Dennison*, 891 F.2d 255, 259–60 (10th Cir.1989); *United States v. Peveto*, 881 F.2d 844 (10th Cir.1989). *See also, United States v. Anderson*, 574 F.2d 1374 (5th Cir.1978) (indicating the trial court had the power to dismiss an indictment with prejudice but did not abuse its discretion by refusing to do so); *Government of Virgin Islands v. Fahie*, 419 F.3d 249 (3rd Cir.2005) (discussing court discretion to dismiss an indictment with prejudice under Fed.R.Crim.P. 16 and its supervisory powers). The Tenth Circuit Court of Appeals ruled in *Dennison*, 891 F.2d at 259–60, the district court had the authority, pursuant to Rule 16(d)(2), to dismiss criminal charges as a sanction against the government for violation of discovery orders. However, the court noted, that authority must be exercised with extreme caution. *See Dennison*, 891 F.2d at 260. In fact, the "instances where an appellate court has upheld a district court's dismissal of an indictment because of alleged prosecutorial misconduct are 'few and far between.'" *Id.*, citing *United States v. Anderson*, 778 F.2d 602 (10th Cir. 1985). The Tenth Circuit Court of Appeals applied the following test to decide the issue:

The Federal Rules of Criminal Procedure give trial courts broad discretion in imposing sanctions on a party who fails to comply with a discovery order:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

Fed.R.Crim.Proc. 16(d)(2). *See United States v. Wicker*, 848 F.2d 1059, 1060 (10th Cir.1988); *United States v. Fernandez*, 780 F.2d 1573, 1576 (11th Cir.1986). The dis-trict court's exercise of discretion is governed by several factors:

When the government fails to comply with a discovery order, the factors the district court should consider in determining if a sanction is appropriate are (1) the reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance. *United States v. Euceda–Hernandez*, 768 F.2d 1307, 1312 (11th Cir.1985); *Fernandez*, 780 F.2d at 1576.

*Wicker*, 848 F.2d at 1061. If a sanction is imposed, it should be the "least severe sanction that will accomplish ... prompt and full compliance with the court's discovery orders." *Id.* at 1060 (quoting *Fernandez*, 780 F.2d at 1576). *Cf. Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (holding that as a general rule a district court exceeds its supervisory power in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant and noting that many errors may be remedied by means other than dismissal). "A continuance may normally be the most desirable remedy for the government's failure to comply with a discovery order." *Wicker*, 848 F.2d at 1062.

*Dennison*, 891 F.2d at 259–60. *See also, United States v. Charley*, 189 F.3d 1251, 1261–62 (10th Cir.1999).

■ [¶ 13] We agree with the federal precedent interpreting Rule 16 as giving trial courts discretion to dismiss charges against a defendant with prejudice, but only in extraordinary circumstances when less severe sanctions will not suffice. 21 Am Jur.2d *Criminal Law* § 784 (2006) speaks generally to the exceptional circumstances which must be present to justify dismissal of a criminal case with prejudice:

A court's dismissal of a criminal case is a remedy of last resort, and a trial judge

abuses his or her discretion by ignoring intermediate remedial steps. Such dismissal is reserved for severe situations because dismissal of a charging instrument frustrates the public interest in the prosecution of crimes.

[¶ 14] In granting Ms. Naple's motion to dismiss with prejudice, the district court indicated it had the "inherent authority" to impose that sanction. "Inherent" or "supervisory" powers include those powers, although not explicitly granted to the court by law, are necessary to the exercise of the court's other powers. *See United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *United States v. Horn,* 29 F.3d 754, 759 (1st Cir.1994). In *Hasting,* the United States Supreme Court recognized three purposes for supervisory powers: "to implement a remedy for violation of recognized rights, to preserve judicial integrity ... [and] as a remedy designed to deter illegal conduct." *Hasting,* 461 U.S. at 505, 103 S.Ct. 1974 (citations omitted).

[¶ 15] Some courts have recognized an "inherent" or "supervisory" power to dismiss criminal charges in the interests of justice. *See, e.g., United States v. Woodley,* 9 F.3d 774, 777 (9th Cir.1993); *People v. Tenorio,* 3 Cal.3d 89, 89 Cal.Rptr. 249, 473 P.2d 993, 996 (Cal.1970). However, even when a court claims an "inherent" power to dismiss, it is rarely invoked. *Woodley,* 9 F.3d at 777. This is true because "[d]ismissing an indictment is so intrusive on a prosecutor's charging authority that it is justified only when the government's conduct substantially prejudiced the defendant and the government flagrantly disregarded the limits of professional conduct." *Id.*

[¶ 16] Wyoming precedent concerning "inherent" or "supervisory" powers does not provide a clear answer as to whether the district court properly concluded it had "inherent" authority to dismiss the case for the State's discovery violation. In *Billis,* we indicated Wyoming courts do not have "inherent" authority to dismiss a criminal charge in the interest of justice. Discussing the *Teno-*

*rio* case cited above in the context of other federal and Wyoming cases, we stated:

Tenorio's holding that the judicial department has the inherent power to dismiss a criminal charge in the interests of justice is directly contradicted by the United States Supreme Court's statement in *Ex Parte United States* [242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916) ] (cited favorably in this court's *Evans [v. State,* 655 P.2d 1214 (1982)] ) that the judicial department has no inherent power to refuse to try a criminal charge upon considerations extraneous to the legality of the charge; by the United States Supreme Court's holding that the executive department has the absolute right to prosecute (*Bordenkircher* [v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604, (1978)] *Weatherford [v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977)], and *Corbitt [v. New Jersey,* 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978)] ); by this court's holding that the prosecutor does not have to enter into plea negotiations with a defendant and has the right to prosecute rather than accept a plea bargain (*Gooden [v. State,* 711 P.2d 405 (1985)] ); and by this court's holdings that the judicial department has no inherent power to suspend a sentence (*Evans* ); to expunge a final judgment of conviction which was without legal error and only for the purposes of restoring a defendant's civil rights or of alleviating his fear of being classified as a habitual criminal (*Stanton [v. State,* 686 P.2d 587 (1984)] ); to grant an annulment of a final judgment of conviction (*Ward [v. State,* 735 P.2d 707 (1987)] ); to reduce the sentence imposed to one which the legislature has not authorized the court to impose at original sentencing (*Williams [v. State,* 692 P.2d 233 (1984)] ); to refuse to impose a sentence (*Evans* ); to grant probation (*Hicklin [v. State,* 535 P.2d 743 (1975)] ); or to grant parole after incarceration (*Sorenson [v. State,* 604 P.2d 1031 (1979)] ).

*Billis,* 800 P.2d at 424–25.

[¶ 17] Both parties refer us to *Newman,* as authority on the "inherent" power question. In *Newman,* we reversed the district court's dismissal with prejudice of the

charges against the defendant. The trial court granted Newman's request for a mistrial on the basis of prosecutorial misconduct and then dismissed the charges against him with prejudice, finding the defendant's speedy trial right had been violated. *Newman*, ¶ 1, 88 P.3d at 446. On appeal, we addressed the question of whether the district court properly dismissed the charges against Newman for violation of his constitutional right to a speedy trial, but declined to determine whether a second trial would violate his right not to be placed twice in jeopardy. *Newman*, ¶¶ 21–22, 28, 88 P.3d at 452–53, 455. Without question, the courts have the power to dismiss charges with prejudice when the defendant's speedy trial or double jeopardy rights have been violated. *See generally, Newman. See also, Sisneros v. State,* 2005 WY 139, ¶ 17, 121 P.3d 790, 797 (Wyo. 2005) (speedy trial). Our decision in *Newman* did not, however, address the issue of whether Wyoming courts have the authority to dismiss a charge with prejudice for the State's violation of a discovery obligation. Accordingly, *Newman* is not instructive on the issue presented in this case.

[¶ 18] In *Meyers v. State,* 2005 WY 163, ¶ 13, 124 P.3d 710, 715 (Wyo.2005), the district court indicated it had the "inherent" power to dismiss a charge "in the interests of justice," but declined to do so. We affirmed the district court's refusal to dismiss a charge after the defendant had been subjected to two trials, each ending in a mistrial. We found it unnecessary to determine whether the district court had the inherent power to dismiss the charges under the circumstances presented there because it was obvious the district court did not abuse its discretion by refusing to dismiss the charges. *Meyers,* ¶¶ 12–13, 124 P.3d at 715. *See also,* Annotation, J. Buchwalter, Dismissal of State Criminal Charges in Furtherance of, or in Interest of, Justice, 71 A.L.R. 5th 1, 1999 WL 728959 (2006) (collecting and analyzing state court cases considering whether courts properly exercised discretion to dismiss criminal charges in the interests of justice).

[¶ 19] Similarly, reliance on "inherent" or "supervisory" powers would seem to be unnecessary in this case. Rule 16(d)(2), as interpreted by federal courts, grants trial courts the authority to dismiss charges with prejudice as a sanction for discovery violations in very limited situations. As noted by the United States Court of Appeals for the First Circuit in *United States v. Horn,* 29 F.3d 754 (1st Cir.1994), "the supervisory power doctrine is interstitial in the sense that it applies only when there is no effective alternative provided by rule, statute, or constitutional clause." *See also, Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Thus, we limit our ruling in this case to matters governed by W.R.Cr.P. 16.

■ [¶ 20] The State argues allowing the district court to dismiss criminal actions with prejudice because of the prosecutor's discovery violations results in an unconstitutional intrusion by the judiciary into the executive branch's exclusive power to prosecute cases. Governmental powers in Wyoming are divided into three branches—legislative, executive and judicial, and no branch may exercise the powers of another. Wyo. Const., art. 2, § 1. In *Billis,* 800 P.2d at 417, 423, we comprehensively discussed the powers of the executive and judicial branches of government:

> The executive department, in the exercise of its executive power to faithfully execute the laws, has the exclusive power to make the charging decision and prosecute the person who has allegedly committed the act determined by the legislative department to be a crime. * * * Although this court stated that, once the prosecution made the decision to prosecute, the process which leads to acquittal or sentencing is fundamentally judicial in nature, we recognized that within the judicial process of criminal prosecution the prosecutor's power to dismiss charges, to reduce charges, to defer charges, in sum to control the prosecution, was exclusive and not shared by the judicial department.
>
> * * *
>
> The judicial department exercises its powers to control its docket, to administer court business, to adjudicate legal issues concerning the criminal procedures that necessarily attend the criminal proceeding,

and to adjudicate substantive legal issues raised by the litigants.

*See also, United States v. Robertson,* 45 F.3d 1423, 1437–38 (10th Cir.1995).

[¶ 21] In propounding its separation of powers argument, the State directs us to *Hilderbrand v. Padget,* 678 P.2d 870 (Wyo.1984). In *Hilderbrand* we stated:

> The prosecutive decision traditionally has been exercised by the executive department, and an attempt by the judicial branch of government to exercise that authority by purporting to foreclose the refiling of a criminal charge in the absence of a constitutional or statutory proscription is constitutionally prohibited as a violation of the separation of powers doctrine.

*Id.* at 872, quoting *State v. Faltynowicz,* 660 P.2d 368, 377 (Wyo.1983) (citations omitted).

[¶ 22] The *Hilderbrand* case addressed a different factual situation than is presented here. In that case, the district court found the prosecutor in contempt of court for refusing to comply with the court's order to pursue a perjury charge against a former undercover drug agent. *Hilderbrand,* 678 P.2d at 871. On appeal, we held the statute which gave the district court authority to direct the prosecutor to charge someone with a crime infringed upon the executive branch's power and discretion to make prosecutorial decisions. Id. at 873–74.

[¶ 23] By contrast, in this case the district court did not infringe upon the prosecutor's decision to prosecute or decline to prosecute Ms. Naple. Although the dismissal with prejudice obviously foreclosed the prosecutor's option of recharging Ms. Naple after the mistrial, the court was not inserting itself into the discretionary and exclusively executive decision of whether or not to bring charges, but was, instead, attempting to enforce its own rules. As we said in *Hilderbrand,* once the prosecutorial decision has been made, the judicial branch becomes involved. *Hilderbrand,* 678 P.2d at 872. Enforcement of court rules is, without doubt, a responsibility of the judicial branch. *See Billis,* 800 P.2d at 423. Thus, the district court did not violate the separation of powers concept when it enforced its rules by dismissing

the charges against Ms. Naple with prejudice. Moreover, as we explained earlier in this opinion, the power to dismiss with prejudice as a sanction for discovery violations may be exercised only in very limited circumstances. The strict conditions attached to this power further ensure there will be no unwarranted exercise of executive power by the court.

## B. Exercise of Discretion in Imposition of Discovery Sanction

[¶ 24] Having determined the district court may, under certain circumstances, dismiss criminal charges with prejudice as a sanction for the State's violation of a discovery obligation, we consider next whether the decision was proper under the circumstances of this case. The district court's decision regarding sanctions for discovery violations is subject to review for abuse of discretion. *Emerson v. State,* 988 P.2d 518, 524–25 (Wyo.1999). We agree with federal precedent interpreting Rule 16(d)(2), which provides three factors for the court to consider in determining the appropriateness of a sanction: (1) the reasons the State delayed producing the requested materials, including whether or not the prosecutor acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the delay; and (3) the feasibility of curing the prejudice with a continuance. *Dennison,* 891 F.2d at 259–60. Once those factors are weighed, the district court should impose the least severe sanction which will ensure the State's compliance with its discovery responsibilities. *Id.*

[¶ 25] Granting Ms. Naple's motion to dismiss the charge against her with prejudice, the district court stated, in pertinent part:

> 4. The State now asks this Court to reconsider its dismissal and, instead, to simply set a new trial date. At the very least, the State requests a dismissal *without* prejudice. Defendant, meanwhile, asks this Court to dismiss the matter *with* prejudice in light of the State's continued violations of court orders in this case and others.

5. This Court has the discretion and authority to dismiss a case pursuant to its supervisory power. *See generally,* Michael A. Berch and Rebecca White Berch, *The Power of the Judiciary to Dismiss Criminal Charges After Several Hung Juries,* 30 Loyola of [Los] Angeles Law Review, 535, 543 (1996–[97] ). *See also State ex rel. Mau v. Ausherman,* 11 Wyo. 410, 72 P. 200 (1902). Indeed, other cases have resulted in dismissals under analogous circumstances. *See Order Dismissing Information, State v. Keith R. Robinson,* Criminal Action No. 6808, Second Judicial District, Albany County (Sept. 9, 2002).

6. The State, as represented by the Carbon County Attorney's Office, has, over the past few years, experienced a litany of violations of court orders in numerous cases, including: *State v. Lorraine Howe,* Criminal Docket No. CT–2004–1528 (Eakin, CJ Presiding); *State v. Quejay T. Armijo,* Docket No. 5813; *State v. Patricia Michaelis,* Docket No. 5804; *State v. Francis Mack Thomas,* Docket No. 5902.

7. In the instances of prosecutorial misconduct and court order violations in each of these cases, this Court and the Circuit Court have clearly advised that any further violations of court orders would result in a dismissal with prejudice of whatever case in which the violation occurred.

8. This Court does not consider this matter lightly. The dismissal of a criminal matter is serious under any circumstances. However, the State's conduct in this case and others leaves this Court with no other option and with no other ability to enforce the law and this Court's order but to grant a dismissal with prejudice.

9. In an effort to ensure accuracy and fairness and to preserve the integrity of the criminal process, this Court deems it necessary to exercise its supervisory power in this instance. The State has left this Court with concerns that a continued failure of this Court to act would allow for abuse, oppression, and injustice in the prosecution of criminal cases in this district.

10. The role of this Court, boiled to its essence, is to be fair to both parties and create a level playing field. The Court simply will not tolerate the State's continued failures, in this case and others, to comply with the law. Not to put too fine a point on it, to do otherwise would just be wrong.

[¶ 26] The district court stated its experience with this particular prosecutor's office in other cases as the reason for dismissing the charges against Ms. Naple with prejudice. Certainly, that experience could properly be considered and may provide some guidance regarding the first factor for consideration—the reasons the State delayed in producing the requested materials. The prosecutor's conduct in other cases could be relevant to a determination of whether the prosecutor's actions were taken in bad faith. *See e.g., Taylor v. Illinois,* 484 U.S. 400, 417, n. 22, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (indicating attorney's conduct in other cases may be relevant to determining the willfulness of the discovery violations in the case before the court); *Fahie,* 419 F.3d 249 (discussing a pattern of discovery violations as indicative of the prosecutor's motivation for failing to produce discoverable items to the defense). However, in order to establish the connection between the other cases and this case, there needs to be evidence about whether the same prosecuting attorney(s) and/or the same type of violation was involved in the previous cases, whether there was an "office policy" to withhold discovery, or whether the delay was simply the result of egregious and repeated sloppiness which could rise to the level of intentional withholding of evidence.[3] Although the court was obviously frustrated by other failures to comply with discovery orders by the prosecutor's office, it did not identify whether those failures, together with the court's admonitions and warnings, were sufficient evidence of a lack of good faith. In addition, it made no findings as to the reasons in this case the

---

**3.** This Court finds it difficult to comprehend why the prosecutor was apparently unaware of the report in question. However, because the record contains no evidence, other than the general statements of the attorneys at the mistrial hearing, we can make no conclusions with regard to bad faith.

State did not produce Trooper Green's report. In fact, the district court stated orally in considering the defense mistrial motion: "The rule of discovery and the order of this Court was violated for whatever reason, and the reason doesn't matter." The district court never revisited that issue and the only information in the record was the statements made by counsel regarding why the report was not produced. The prosecutor indicated the report was not in his file and the failure to locate it and produce it to the defense was an administrative mistake. He provided no specific explanation of his efforts to respond to the discovery request, no description of what internal procedures are followed to insure all responsive information is produced, and no definitive statement of when the State discovered the "missing" report. Defense counsel seemed to agree with the prosecutor's characterization during the hearing, stating: "I fully understand that there was no purposeful preventing of my receiving the report." Counsel's representations are not sufficient to establish the reason for the failure to produce the report or whether the prosecutor acted in bad faith.

[¶ 27] The second factor in the analysis is the prejudice suffered by the defendant as a result of the State's delay in producing the information.[4] This factor was, arguably, discussed by the district court in the context of whether or not a mistrial should be granted. It was not, however, addressed with regard to whether the sanction for the discovery violation should be a dismissal with prejudice. The district court reasoned that, based upon this and other cases where the prosecutor had failed to comply with discovery orders, its only option was to dismiss with prejudice. There was no discussion or findings about the prejudice which would be suffered by this particular defendant if the matter was not dismissed with prejudice.

[¶ 28] Finally, the district court did not discuss whether that prejudice could be cured by a less severe sanction such as a continuance. Rule 16(d)(2) specifically delineates non-exclusive remedies which may be

imposed for discovery violations, including suppression of the non-produced evidence and/or a continuance. *See e.g., United States v. Muessig,* 427 F.3d 856 (10th Cir.2005) (district court properly applied its discretion by suppressing undisclosed evidence but refusing to grant a mistrial as an additional sanction); *Taylor,* 484 U.S. at 410–15, 108 S.Ct. 646 (affirming trial court' sanction of preclusion of defendant's evidence for failure to comply with discovery obligations). The district court did not determine whether the mistrial had cured the prejudice suffered by Ms. Naple as a result of the late disclosure of Trooper Green's statement or consider whether additional lesser sanctions, such as suppression of the statement, may cure the prejudice. Although the district court stated it had no option other than dismissing with prejudice, it did not explain why that was so. As we recognized in *Lawson,* a district court's failure to consider the proper factors in determining whether a particular sanction is warranted amounts to an abuse of discretion. *Lawson,* 994 P.2d at 947.

[¶ 29] We certainly understand the district court's frustration with the State's discovery violations. "The failure to comply with a discovery order is to be deplored." *Lindsey,* 725 P.2d at 655. A history of discovery violations makes that failure even more reprehensible. Nevertheless, the record and the district court's order do not, at this point, justify the decision to dismiss the charges against Ms. Naple with prejudice and, consequently, we conclude the district court abused its discretion when it did so.

[¶ 30] Upon remand, the district court, after consideration of the three factors set forth herein, can determine the proper sanction, or combination of sanctions, in this case. The district court may determine the prosecutor's continual disregard of discovery orders evidences a lack of good faith, and dismissal with prejudice is the only remedy severe enough to gain compliance. On the other hand, after considering the evidence presented on remand utilizing the proper test, the district court may determine that

---

4. Ms. Naple argues she does not have to establish prejudice to justify the sanction of dismissal with prejudice. The cases cited by her generally do not address Rule 16(d)(2). Consequently, we do not accept her invitation to remove the prejudice requirement from our analysis.

the mistrial and the resultant continuance is the least severe sanction that will accomplish prompt and full compliance with the court's discovery orders, and is, therefore, appropriate. As we have said before, the district court has broad discretion in making those determinations, but that discretion must be exercised in a reasoned fashion after consideration of the appropriate factors, and the court should choose the least severe sanction which it concludes will ensure the State's compliance with its discovery responsibilities.

[¶ 31] Reversed and remanded for proceedings consistent with this opinion.

VOIGT, C.J., files a dissenting opinion, in which HILL, J., joins.

[¶ 32] While I agree with most everything said in the majority opinion, I simply would come to a different conclusion. If W.R.Cr.P. 16(d)(2) truly does give the district court broad discretion in improvising a remedy for discovery violations by the State "as it deems just under the circumstances," then the circumstances of this case, coupled with the matters described in paragraph six of the district court's order, should suffice. The district court deemed a particular remedy to be just under the circumstances. Even though the district court's order did not directly identify and discuss the *Dennison* factors, I would find that it sufficiently recited a reasoned decision, and sufficiently met the spirit of *Dennison*. Repeated violations by a prosecutor's office constitute the type of extreme behavior for which nothing short of dismissal with prejudice may have any effect.