**UNITED STATES of America,**

v.

**Patrick ROBINSON a/k/a Shawn Thomas and a/k/a Gary Smith, Defendant.**

**No. Crim.A. 1:97CR408JOF.**

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 24, 1997.

David Michael Leta, Office of United States Attorney, Atlanta, GA, for U.S.

Mildred Geckler Dunn, Federal Defender Program, Atlanta, GA, for defendant.

## *ORDER*

FORRESTER, District Judge.

This matter is before the court on the government's motion to reconsider this court's order excluding the testimony of the government's fingerprint expert.

## I. *STATEMENT OF THE CASE*

Defendant Patrick Robinson was arrested on August 13, 1997 and indicted on September 9, 1997. He was indicted on one count of being found in the United States, having previously been deported, after knowingly and unlawfully reentering the United States without permission in violation of Title 8 U.S.C. § 1326(a) and (b)(2).

The matter came on for a pretrial conference before a Magistrate Judge on October 7, 1997. At that time, Robinson's counsel filed a motion for a disclosure of the report of expert witnesses pursuant to Rule 16(a)(1)(E). The Magistrate Judge

ordered the government to strictly comply with Rule 16 with reference to expert testimony after defense counsel gave notice of the importance of the issue in this case.

Fifteen days later, the Assistant United States Attorney provided the curriculum vitae of a fingerprint technician from the Atlanta Police Department to the defendant. Forty-nine days after the Order by the Magistrate Judge, and only one business day prior to trial, the government provided the first summary of the expert's testimony. This summary proved to be a conclusory report indicating that it was the fingerprint expert's opinion that the print on the warrant of deportation was identical with the known fingerprints of Patrick Robinson.

The matter was set for trial before the undersigned on December 1, 1997. On that date, and with a jury pool summoned, the court considered the defendant's motion in limine which sought the exclusion of the expert witness testimony on the fingerprint comparisons because the discovery produced by the government did not comply with the Federal Rules of Criminal Procedure nor with the Order of the Magistrate. The court determined that the report was insufficient because it failed to provide the basis for the expert witness's opinion. The court continued the case for one week and directed the Assistant United States Attorney to provide Mr. Robinson's counsel with all of the points of identification on which the government's expert would rely as a basis for her opinion that Robinson's prints appear on the warrant of deportation. The United States was directed to provide that information on December 1st in order to allow defense counsel to consult with her own expert in preparation for the trial.

The government faxed an amended expert report to defense counsel a day late. That report did not provide the clarity that might have been wished for as to which set of known prints were used to make the comparison. More importantly, while the report did provide thirteen

points of comparison and located each point with reference to the previous point, it did not provide the location of point one. The defendant's expert was, therefore, unable to review the basis of the opinion rendered by the government's fingerprint expert. The court inquired if the government's expert believed that she could locate point one based on what was provided and the court was told that she did not believe that she could locate point one either. As a result, the court granted the second motion in limine and stated that it would exclude the government's fingerprint expert from testifying. Again a jury pool was standing by.

In a motion for reconsideration, the government now asserts that it just did not understand what the court had ordered to be turned over. Specifically, the government's brief states:

> ... what the court intended that the government provide to defendant were photocopies of the fingerprint examiner's charts. Government counsel did not understand that these charts were what the Court was ordering be provided to defendant.
>
> Upon realizing what the court was referring to in its order of December 1, government counsel immediately turned the actual photocopies over to the defense. In fact, had defendant wanted to examine these charts earlier, government counsel would have provided them. Unfortunately, defendant never requested these items....

Motion to Reconsider at 2–3

This argument, at the very least, strains the limits of candid advocacy. The court has never stated that its order of December 1 was intended to reach expert charts. Because charts are not always prepared, the court spoke of points of identification. The government did not turn over the charts until December 8th, moments before the hearing on the second motion in limine. Nor did the government argue at the hearing that this was done to satisfy

the court's order or that the defense now knew the location of point one. Finally, by requesting demonstrative evidence in his motion for discovery, filed October 6, 1997, the defendant did request the charts.

. The court understands that although there is some other evidence tending to prove that the defendant in court is the Patrick Robinson who was deported, the fingerprint testimony is very important to the government in undertaking its obligation to prove the case beyond a reasonable doubt.

## II. Discussion of Law

Rule 16(a)(1)(E) provides that:

At the defendant's request, the government shall disclose to the defendant a written summary of testimony the government intends to use under Rule 702, 703 or 705 of the Federal Rules of Evidence during its case in chief at trial. This summary must describe the witnesses' opinions, the *basis and reasons therefore,* and the witnesses qualifications.

Fed.R.Crim.P. 16(a)(1)(E) (emphasis supplied).

A fingerprint expert bases opinions on the location of a plurality of distinctive patterns within one fingerprint and the location of those same patterns, in an identical relationship to each other, in another fingerprint. It is this court's experience that even where a fingerprint experts provide blowups it is difficult for the court or the jury to determine the existence or nonexistence of a particular feature or to determine if it is in the same relationship. The terminology is somewhat arcane and the means of judging relationships is not immediately familiar.

When a defendant faces an expert witness at trial there are two issues. The first is whether the witness's testimony is entitled to appreciable weight based on the reasons given for the opinions stated. The second issue is whether or not the prints were in fact made by the same person. If a defendant has a clear copy of the print in question, he may obtain his own expert to offer an opinion on the ultimate fact and, therefore, the defendant is not prejudiced in this regard by a failure of the government to provide the bases for its expert's opinion.

A defendant, however, is never required to introduce any evidence and, therefore, the defendant has a right to predicate a trial strategy solely on an attack of the opinion evidence offered by the government. If a defendant does not have the bases for the government's opinion, there is no way the defendant's counsel can effectively cross-examine the expert. It is this issue, which goes to the fairness of the trial, that the court must always keep in mind in dealing with discovery issues in criminal cases.

There are also concerns of judicial economy and the legitimate expectation of the public and of the defendant in the speedy disposition of criminal cases. In this case the relevant portions of Rule 16 tell the Assistant United States Attorney what he must do. He was ordered by the United States Magistrate Judge to comply with his Rule 16 obligations generally and this one in particular. A United States District Judge told him precisely what he must do and granted a continuance. Yet the Assistant United States Attorney failed to comply with the court's order.

In *United States v. Campagnuolo,* 592 F.2d 852, 858 (5th Cir.1979) the government argued to the appellate court that the trial court should not suppress the government's evidence for noncompliance with discovery orders unless some actual prejudice to the defendant is shown. The appellate court replied that:

[t]his argument misconceives the District Judge's broad discretion to administer sanctions for the violation of a valid discovery order. *See U.S. v. Bockius,* 5 Cir.1977, 564 F.2d 1193, 1196; *U.S. v. Valdes,* 5 Cir.1977, 545 F.2d 957, 961. We find no abuse of discretion where, as here, a district judge for prophylactic

purposes suppresses evidence that, under a valid discovery order, the government should have disclosed earlier, even if the nondisclosure did not prejudice the defendants.

*Campagnuolo,* 592 F.2d at 858.

The Tenth Circuit, following *Campagnuolo,* has observed that "[o]n occasion the district court may need to suppress evidence that did not comply with discovery orders to maintain the integrity and schedule of the court even though the defendant may not be prejudiced." *U.S. v. Wicker,* 848 F.2d 1059, 1061 (10th Cir.1988).

Of course, full sanctions should not be imposed lightly. The court must give due consideration when it suppresses important government evidence to the "expense of sacrificing the fair administration of justice and the accurate determination of guilt and innocence." *United States v. Euceda–Hernandez,* 768 F.2d 1307 (11th Cir.1985). That case directs the district court to consider the reason for the government's delay, the extent of the prejudice, and the possibility of curing any prejudice by continuance. As best this court can determine, the failures of the government in this case to comply with its Rule 16 obligations were begun in lethargy and a lackadaisical acknowledgment of the mandates of Rule 16 and ended with inattention to the order of the court, a stubborn refusal to understand the requirements of Rule 16, and a somnolent review of the materials being produced.

To be sure, the court could have granted yet another continuance for the government to get it right. The court might have even invited the expert witness to chambers and assisted that expert in dictating a proper report to the judge's secretary. This matter, however, ought to be at an end. Failing to impose a sanction on this record would be to establish a precedent countenancing a disregard of discovery obligations which will assure either a snail like progression of the 800 felony cases filed in this court annually or a succession of trials in which the United States Department of Justice is allowed to flaunt the law it exists to support and defend.

Accordingly, the government's motion to reconsider is DENIED and the defendant's second motion to exclude the testimony of the fingerprint expert is GRANTED.